UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No.: 5:26-CR-110-TPB-PRL

TERRANCE PATRICK EVANS,

Defendant,
_________________________________/

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

This Court should deny Defendant, Terrance Patrick Evans,' Motion to Dismiss (the "Motion") because Congress did not exceed its enumerated powers when it passed 18 U.S.C. § 611. The Constitution provides that the federal government maintains authority over elections, including protecting the safety and integrity of congressional elections.

## I. BACKGROUND

On November 5, 2024, the defendant voted in the 2024 Presidential election. Furthermore, the defendant was not a citizen of the United States when he voted. On September 28, 2026, the defendant was charged with unlawfully voting as a noncitizen, in violation of 18 U.S.C. § 611. The defendant moved to dismiss the charge on October 20, 2026.

## II. ARGUMENT

### A. The Constitution authorizes Congress to enact laws to protect the integrity of federal elections.

While the Constitution primarily delegates the authority to regulate elections to the states, it also provides that Congress has authority to protect the integrity of federal elections. The Elections Clause states that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. I, § 4, cl. 1.

The Supreme Court has held that the Elections Clause confers authority to Congress "to provide a complete code for congressional elections . . . in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary to enforce the fundamental right involved." Smiley v. Holm, 285 U.S. 355, 366 (1932). Congress has authority over elections "not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns . . . ." Smiley, 285 U.S. at 366. Thus, Congress has broad authority to protect the integrity of congressional elections.

*See* Id at 367 (stating that Congress "has a general supervisory power over the whole subject." (internal quotation marks omitted)).

Regarding presidential elections, the power to appoint electors belongs to the states. U.S. CONST. art. II, § 1, cl. 2. Although Congress's authority over presidential elections appears more limited than the states' power under Article II or its constitutional power over congressional elections found in Article I, the Supreme Court has held that Congress nonetheless has the constitutional authority to protect the integrity of such elections. In Burroughs and Cannon v. United States, 290 U.S. 534 (1934), the Supreme Court held that "[t]he importance of [the presidential] election and the vital character of its relationship to and effect upon the welfare and safety of the whole people cannot be too strongly stated" and that "Congress, undoubtedly, possesses that power . . . to preserve the . . . institutions of the general government from impairment or destruction[.]" Id. at 545.

While Congress does not have general regulatory authority over state and local elections, it can still exercise its constitutional power over federal elections. In the Voting Rights Act Amendments of 1970, Congress, prior to ratification of the Twenty Sixth Amendment, lowered the minimum voting age in both state and federal elections from 21 to 18 and prevented states from disqualifying voters in presidential elections due to residency requirements. *See* Pub. L. 91-

285, 84 Stat. 314. In Oregon v. Mitchell, 400 U.S. 112 (1970), states challenged Congress's authority to enact these laws. On the voting age restrictions, four justices believed that Congress could regulate voting ages for both federal and state elections, four justices believed that Congress could not regulate voting ages for either federal or state elections, and Justice Black, writing for himself, supplied the controlling vote holding that Congress has final authority over federal elections but not state elections. Id. at 117-18. On the residency requirements, eight justices found that Congress had constitutional authority to impose them on the states. Id. The justices disagreed on which specific constitutional provision gives Congress the authority to regulate federal elections,[1] but a majority agreed that when it came to federal elections, Congress could dictate certain voter eligibility restrictions to the states. Id. As Justice Black explained, "Any doubt about the powers of Congress to regulate congressional elections, including the age and other qualifications of the voters, should be dispelled by the opinion of this Court in Smiley v. Holm, 285 U.S. 355 (1932)." Mitchell, 400 U.S. at 122.

[1] Justices Douglas, Brennan, White and Marshall would have relied on the Fourteenth Amendment. *See* Mitchell, 400 U.S. at 144 (op. of Douglas, J.); Id. at 231 (op. of Brennan, White, and Marshall, JJ.). Justice Black relied on the Elections Clause and the Necessary and Proper Clause. *See* Id. at 119–25. As for the residency requirements only, Chief Justice Burger and Justices Stewart and Blackmun would have relied on the Privileges or Immunities Clause and the Necessary and Proper Clause. *See* Id. at 285–86 (opinion of Stewart, J.).

The defendant argues that the Supreme Court interpreted the Elections Clause as not granting Congress the authority to establish voter qualifications in its decision in Arizona v. Inter Trible Council of Arizona, Inc. (ITCA), 570 U.S. 1 (2013). The court stated that "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." Id. at 16 (emphasis in original). However, ITCA is a statutory preemption case answering the question of whether an Arizona evidence-of-citizenship requirement is preempted by the National Voter Registration Act. Thus, Scalia's discussion of voter qualifications and the Elections Clause is merely dicta, so the holding in Mitchell that Congress may enact certain voter qualification restrictions remains valid law.

The defendant's position contradicts the Supreme Court's holding in Mitchell that Congress has the power to enact certain voter qualification regulations. Because Congress has authority to protect the integrity of congressional elections by enacting voter qualification regulations, it did not exceed its powers when it enacted Section 611. Because Section 611 is constitutional, this Court should deny the defendant's Motion.

**B. Congress' power over immigration reinforces the constitutionality of Section 611.**

Not only does Congress have authority to enact Section 611 under its Elections Clause power, Congress' immigration power allows it to enact Section 611. Congress has "broad, undoubted power over the subject of immigration and the status of aliens." Arizona v. United States, 567 U.S. 387, 394 (2012); *see* U.S. CONST. art I, § 8, cl. 4 (granting Congress power "[t]o establish a uniform Rule of Naturalization"). In fact, "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." Harisiades v. Shaughnessy, 342 U.S. 580, 588–89 (1952).

In this context, Section 611 can be understood not only as a voter qualification permitted under Congress' power to regulate federal elections, but also as a criminal immigration sanction permitted under Congress' power to regulate immigration. Because Congress has substantial power over the subject of immigration, it had the power to enact Section 611. Because Section 611 is constitutional, this Court should deny the instant Motion.

### C. The court's decision in *Cox* does not bind this court.

In the final paragraphs of his Motion, the defendant notes that a judge in the Southern District of Florida recently granted a defendant's motion to dismiss, ruling that Section 611 is unconstitutional. *See* United States v. Cox, 2026 U.S. Dist. LEXIS 225387 (2026). Another district court declined to follow the reasoning in Cox, denying the defendant's motion to dismiss and stating that "Courts have applied [Section 611] for years without questioning its validity." United States v. Bhengura, 4:26-cr-00314-P, Order Denying Motion to Dismiss at 2 (N.D. Tex. Oct. 22, 2026). The decision in Cox is on appeal and does not bind this Court, so the defendant's Motion to Dismiss should be denied.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court **DENY** the defendant's Motion to Dismiss.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: 

Jerry M. Harre
Special Assistant United States Attorney
USA No. 0234
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471

Telephone: (352) 547-3600
E-mail: jerry.harre@usdoj.gov